No. 86-486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

JEROME JOHNSON,

        Claimant and Respondent,

   -vs-

J.W. GIBSON, Employer,

    and

FIDELITY & CASUALTY COMPANY OF NEW YORK,

        Defendants and Appellants.

---

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Herndon, Harper & Munro; Donald R. Herndon, Billings,
Montana

    For Respondent:

        Keefer Law Firm; Gene R. Jarussi, Billings, Montana

---

Submitted on Briefs:  April 3, 1987

Decided:  July 23, 1987

Filed:  JUL 23 1987

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Fidelity & Casualty Company of New York (the insurer) appeals a Workers' Compensation Court order which grants a lump sum advance to the claimant, Jerome Johnson. Johnson cross-appeals contending the court should have increased his award by 20% for insurer unreasonableness. The issues on appeal are (1) whether the court erred in granting a lump sum advance to claimant to pay a debt which he had incurred in anticipation of a settlement of his claim, which settlement did not occur; (2) whether the court erred in awarding attorney's fees and costs to claimant; and (3) whether the court erred in refusing to impose a 20% penalty upon the insurer for unreasonably refusing the lump sum advance. We affirm.

In April 1981, claimant suffered a severe injury while working for J.W. Gibson. The injury was compensable for workers' compensation purposes. As a result of the injury, claimant is a paraplegic and is confined to a wheelchair. The insurer accepted liability for claimant's injury and has paid, and apparently continues to pay, temporary total disability benefits to claimant.

In the fall of 1982, claimant bought a new vehicle as his old car was unreliable on snow and ice. The insurer provided claimant with a $9,100 lump sum advance settlement to enable him to buy a new two-door car, a Dodge 400. Because of his disability, claimant had difficulties with his new vehicle. To get in and out of the car, he had to disassemble his wheelchair, place it on the seat next to him and assemble the chair again to get out. In taking the wheelchair in and out of the car, claimant tore up the car's interior with the chair's frame. Moreover the chair was very difficult to disassemble in cold weather. The car was also

unsatisfactory in that claimant could not effectively strap his legs down to the car seat. Claimant suffers occasionally from leg spasms. Without being able to strap his legs down, claimant suffered bruises on his legs from having leg spasms while driving.

Beginning at least in 1984, claimant was aware that his attorney was conducting settlement negotiations with the insurer. Claimant's attorney informed him of at least one settlement proposal whereby the insurer would pay claimant $50,000 "upfront" and monthly payments. Claimant had regular discussions with his attorney about a possible settlement of the workers' compensation claim. The parties apparently exchanged several different proposals.

In July 1984, claimant traded his Dodge 400 car in on a new 1984 GMC van because of his difficulties with the car. He could enter and exit the van without disassembling his wheelchair. He could also strap his legs down in the van so as to avoid bruising his legs when he suffered leg spasms. Prior to the purchase, claimant made no request to the insurer to provide him with a lump sum advance to pay for the van nor did he notify the insurer of his intentions of purchasing the van. Claimant received trade-in value for his car and signed a one year promissory note obligating him to make one approximately $21,000 payment in July 1985 in full payment for the van. Claimant testified that he signed the promissory note with the idea that his attorney and the insurer were close to a settlement agreement and would settle his claim within one year.

Eventually, the settlement negotiations broke down and no final settlement was reached. Claimant requested that the insurer provide him with a lump sum advance sufficient to pay off his debt on the van. The insurer refused to make that lump sum advance. In March 1985, however, the insurer did

3

make a lump sum advance of $1,285 to claimant for tuition for a correspondence course in gemology. In June 1986, claimant filed a petition with the Workers' Compensation Court requesting a lump sum advance to pay off the debt on his van. In September 1986, the court filed its judgment ordering the insurer to pay to claimant a lump sum advance sufficient to pay off the debt plus accrued interest. The court refused to impose the 20% penalty upon the insurer but did award claimant his costs and attorney's fees. This appeal followed.

The first issue is whether the court erred in granting the lump sum award to claimant. Section 39-71-741, MCA, provides the Workers' Compensation Court with general authority to grant lump sum awards. The date of claimant's injury predates the 1985 amendments to § 39-71-741, MCA, and, therefore, those amendments are not applicable to this case. Buckman v. Montana Deaconess Hosp. (Mont. 1986), 730 P.2d 380, 43 St.Rep. 2216; Odenbach v. Buffalo Rapids Project (Mont. 1987), 731 P.2d 1297, 44 St.Rep. 67. The applicable law was stated in Byrd v. Ramsey Engineering (Mont. 1985), 701 P.2d 1385, 1387, 42 St.Rep. 991, 993-994; quoting in part from Willoughby v. Arthur G. McKee & Co. (1980), 187 Mont. 253, 256-257, 609 P.2d 700, 701-702;

> "The general rule concerning the award or denial of lump sum settlements under the Workers' Compensation Act is well settled in this state. Lump sum settlements are only granted in exceptional circumstances. Where the best interests of the claimant are generally served by paying compensation in regular periodic installments, the conversion of benefits to a lump sum settlement has been recognized as the exception rather than the rule." (Citations omitted) . . .
>
> "Lump sum settlements are only granted where there is 'outstanding

4

> indebtedness,' 'pressing need,' or where
> 'the best interests of the claimant, his
> family and the general public will be
> served.'" . . . the decision to award or
> deny a lump sum settlement will not be
> interfered with on appeal unless there
> has been an abuse of discretion.
> (Citations omitted.)

The Byrd case is similar to the situation presented by this appeal. There, the claimant purchased a house in anticipation of his workers' compensation award. The Workers' Compensation Court declined to award Byrd a lump sum advance to pay off his house loan. We reversed and held that Byrd was entitled to receive the remainder of his benefits in a lump sum.

Similarly, we now hold that the court did not abuse its discretion in awarding claimant Johnson a lump sum award to pay for his van. Claimant has shown a pressing need for the van. The bank will repossess the van if claimant does not receive a lump sum advance to pay for it and he could also be liable for a deficiency judgment. It is his only automobile and he lives seven miles out of town. We also note the severe difficulties which claimant had with his previous vehicle and handling his wheelchair. Finally, it appears that claimant sincerely believed that a settlement would be reached enabling him to pay for the van. The best interests of claimant, his family and the general public will be served by a lump sum award sufficient to pay off this outstanding indebtedness.

The second issue is whether the lower court erred in refusing to impose the § 39-71-2907, MCA, 20% penalty upon the insurer for unreasonable delay or refusal to pay.

> Whether an action is "unreasonable" under
> this statute is a question of fact which
> is subject on appeal to the limited
> review of the substantial evidence test.
> (Citation omitted.) If there is

5

> substantial evidence to support a finding
> of "unreasonableness," this Court cannot
> overturn the finding.

Wight v. Hughes Livestock Co., Inc. (Mont. 1981), 634 P.2d 1189, 1192, 38 St.Rep. 1632, 1636. The Workers' Compensation Court held that the insurer was not unreasonable and, as part of its reasoning behind that holding stated;

> The Court is aware of the defendant's predicament and agrees in principal. This debt was incurred by the claimant without any authorization or approval by the defendant. Defendant had no voice in the making of a debt for which it is now held responsible . . .
>
> The claimant has acted irresponsibly. Yet given the claimant's earnings when injured, his age and the severity of his injury, it is no surprise that he has little expressed appreciation for the financial predicament he has created. . . . We caution counsel to advise their clients to not spend money that does not exist . . . In fairness to all parties, it is appropriate that the repayment of the advance begin immediately by reducing the current biweekly benefits being paid to the claimant.

Substantial evidence supports the court's determination that the insurer was not unreasonable and we defer to that finding. We note that previously the insurer had freely provided two lump sum advances to claimant, one of those being for the purchase of a vehicle.

The last issue is whether the court erred in awarding attorney's fees and costs to the claimant under § 39-71-612, MCA. Appellant argues that this section is not authority for a grant of attorney's fees where the sole controversy is the propriety of a lump sum advance. We disagree. In Polich v. Whalen's O.K. Tire Warehouse (Mont. 1981), 634 P.2d 1162, 38 St.Rep. 1572, we held that attorney's fees may be awarded

6

under this section where a dispute over a lump sum advance is resolved in the claimant's favor. Appellant also argues that Lasar v. Oftedal & Sons (Mont. 1986), 721 P.2d 352, 43 St.Rep. 1239, mandates that no attorney's fees can be awarded. That case is inapplicable. There, the insurer conceded permanent total disability three weeks before trial and, therefore, "no controversy existed at trial and the amount awarded was the same as that agreed upon as due." Lasar, 721 P.2d at 354. Here, there was a controversy at trial which was resolved in claimant's favor and, therefore, the award was proper.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7